**UNITED STATES DISTRICT COURT**
**SOUTHERN  DISTRICT OF FLORIDA**

**CASE NO.  15-20416-CR-KING**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**vs.**

**LOURDES MORA,**

    **Defendant,**
**----------------------------------------/**

**DEFENDANT LOURDES MORA'S  RESPONSE  TO THE PRESENTENCE**
**INVESTIGATION REPORT**
**and**
**REQUEST FOR AN ALTERNATIVE  SENTENCE**

    The defendant, Lourdes Mora,   by and through her undersigned counsel, and pursuant to

U.S.S.G. § 6A1.2-3, p.s., Fed. R. Crim. P. 32 (d), ((2) and (f), and the Fifth and Sixth  Amendments

to  the United States Constitution, respectfully files  her Response  to the Presentence Investigation

Report (PSR) and Request for an Alternative  Sentence and as grounds therefore, states as:

**I.  INTRODUCTION:**

    Lourdes Mora is a 59  year old naturalized citizen who has never before been arrested, yet

alone incarcerated.  She has never been married and has always lived with her mother, who is now

83 years old and suffers from a variety of debilitating  health problems. Ms. Mora, herself, has a

long history of bipolar disorder and has been medicated since she was 26 years old.  She also suffers

from severe arthritis, diabetes, and she is a cancer survivor.  She cannot walk very far without

assistance.

As to the instant offense, Ms. Mora immediately accepted responsibility for her involvement in this offense, she has cooperated with the Government, she has signed both a written Plea Agreement and Factual Proffer,  and she pled guilty about two short  months after  her voluntary surrender  on June 16, 2015. With that said, Ms. Mora, while not making excuses, will ask this Court to consider she was battling cancer, diabetes, and bi-polar disorder, and was medicated for all these conditions during her involvement in this offense.  She has not objected to the guideline calculations suggested in the PSR; however, through  counsel, she will ask this Court to consider a sentence below the *advisory* guideline range pursuant to the sentencing factors of 18 USC § 3553..

Second, the Court is to consider if there are any factors that may warrant a departure from the *advisory* guideline range. As before *U.S. v. Booker,* 543 U.S. 220 (2005), the court is to depart when it is warranted under the facts and circumstances of a particular case. "The application of the guidelines is not complete until the departures, if any, that are warranted are appropriately considered," *U.S. v. Jordi,* 418 F. 3d 1212, 1215 (11th Cir. 2005).  Although Ms. Mora  is hopeful the Government will file a § 5K1.1 and/or 18 USC § 3553(e) motion recognizing her substantial assistance (see paragraphs 11and 12 of written Plea Agreement), the  PSR, at paragraphs 78 and 79,  fails to identify any additional factors that may warrant a downward  departure from the *advisory* guideline range. Pursuant to paragraph 14 of the written Plea Agreement, "the United States and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court impose a sentence at the low end of  the *advisory* guideline range produced by application of the Sentencing Guidelines, but that the defendant may argue for a variance from the guideline range based on the defendant's personal medical conditions."

Lastly, the Court is to consider all of the sentencing factors of 18 USC § 3553(a) and impose

a sentence which is "reasonable" and not greater than necessary to achieve the sentencing objectives set forth in 18 USC § 3553(a). Consistent with paragraph 14 of the written Plea Agreement, as set forth more fully below, Ms. Mora, through counsel, believes there are factors worthy of this Court's consideration.

## II. CLARIFICATIONS TO THE PSR:

1. As to page 2 of the PSR, Lourdes Mora's arrest on June 16, 2015 was a voluntary surrender.

2. As to paragraph 20 of the PSR, Lourdes Mora has admitted she signed documents; however, at no time did she enter information on those documents. Further, she neither solicited nor recruited patients and she did not received kickbacks. Rather, she earned a salary of about $95,000 for those three years, reported it as taxable income, and paid taxes. We believe the evidence in this case firmly supports amending paragraph 20 to incorporate these corrections.

3. There are no objections to the guideline calculations or any additional non-sentencing issues presented in the PSR.

## III. SENTENCING SUBMISSION AND REQUEST FOR ALTERNATIVE SENTENCE:

Lourdes Mora has pled guilty to conspiracy to commit healthcare fraud, in violation of 18 USC § 1349. She agrees with the guideline calculations presented in the PSR and is hopeful the Government will acknowledge her substantial assistance and file a § 5K1.1 and/or 18 USC § 3553(e) motion on his behalf. Through counsel, she has not offered any additional argument for downward departure.

Notwithstanding the above, this Court is fully aware the guidelines have been *advisory* since

2005, *U.S. v. Booker,* 543 U.S. 220 (2005), followed by *Gall v. United States,* 128 S. Ct. 586, and *Kimbrough v. United States,* 128 S. Ct. 558, both decided on December 10, 2007. *United States v. McBride*, 511 F. 3D 1293 (11TH Cir. 2007), made clear that district courts are only required to give "some weight" to the advisory guidelines, as they are to the other 18 USC § 3553 factors. To that end, Lourdes Mora, through counsel, offers the following:

**Nature and Circumstances of Offense:**

1. **Agreed Factual Basis For Guilty Plea:** According to the statement signed by the parties in this case, Lourdes Mora has admitted she was involved in a conspiracy to commit healthcare fraud between about February 2008 and December 2010. During that time, she was a licensed mental health counselor in the State of Florida, and worked as a therapist at R and S Community Mental Health, St. Theresa Community Mental Health Center, and New Day Community Mental Health Center. She was to provide intensive PHP therapy to mental health patients and, she has admitted, the majority of patients she treated at these centers did not qualify for PHP treatment and/or receive genuine PHP services. Between approximately February 2008 and December 2010, these three mental health centers submitted approximately $68 million in fraudulent billing to Medicare and were paid approximately $27 million for those claims.

2. **Speedy Resolution of Criminal Liability:** Lourdes Mora was first confronted by Government agents in 2011, more than four years ago, following the search warrants and shut down of the three referenced mental health centers. She was immediately questioned by agents and offered her cooperation. She later retained legal counsel and, years later, she met at least twice with Government agents in 2014 and, again, before her voluntary surrender on June 16, 2015. By August 27, 2015, about two months later, Lourdes Mora had accepted responsibility for her involvement in

this offense, she signed both a written Plea Agreement and Factual Proffer, and she pled guilty.  In short, Lourdes Mora has done all she could to  quickly resolve her  criminal liability in this case.

**3.  Lourdes Mora's Substantial Assistance to  the United States:** As stated, Ms. Mora's cooperation with the Government was immediate four years ago, even without first consulting an attorney,  and continued in 2014 and before her change of plea in 2015.  Counsel will have more to say about the timeliness and extent of Ms. Mora's  cooperation at sentencing.[1]

   In *Roberts v. United States*, 445 U.S. 552, 558 (1980), before there were federal sentencing guidelines and before there was *Booker,* the court said that a defendant's cooperation demonstrates that the "defendant will transgress no more [and will] respond to rehabilitative efforts [and] not deem himself at war with his society."

Pursuant to paragraph 11 of the written Plea Agreement, Lourdes Mora  remains hopeful the Government will file a § 5K1.1 or  18 USC § 3553(e)  motion before or at the sentencing hearing recognizing his substantial assistance.  However, with that said, Ms. Mora  does not face a mandatory minimum sentence in this case and, therefore, the filing of a § 5K1.1 motion is not necessary to reduce his sentence beyond any statutory minimum sentence.  The Court, under § 5K2.0 or 18 USC § 3553, may apply any weight to Ms. Mora's  cooperation in determining a "reasonable" sentence. Indeed, this Court may consider  *United States v. Knox*, 573 F. 3d 441 (7th Cir.  2009) (we agree with Davis that, as a general matter, a district court may consider a defendant's cooperation with the government as a basis for a reduced sentence, even if the government has not made a  § 5K1.1 motion); *United States v. Fernandez*, 443 F. 19, 33 (2nd Cir. 2006) (reasoning that a district court

---

[1] The court in *Pepper v. United States*, 131 S. Ct. 1229 (2011), addressed the importance of considering events that transpire between the criminal conduct and the sentence in the punishment decision.

5

should consider "the contention that a defendant made efforts to cooperate even if those efforts did not yield a Government motion for a downward departure pursuant to U.S.S.G. § 5K1.1"); *United States v. Doe*, 398 F. 3d 1254, 1260-61 (10th Cir.  2005) (concluding that "a defendant's assistance should be fully considered by the district court at sentencing even if that assistance is not presented to a court in the form of a § 5K1.1 motion"); *United States v, Murray*, 2005 WL 1200185 (S.D.N.Y. May 20, 2005) (unpub.) ("fact that defendant testified as witness for the government at time when he had nothing to gain provides support for his genuine contrition"); *United States v. Hubbard*, 369 F. Supp. 2d 146, 150 (D. Mass.  2005) (suggesting court can correct for government's bad faith not making motion under 3553(a)(2)(C); and *United States v. Khoury,* 62 F. 3d 1138 (9th Cir.  1995) (court may depart downward where government refuses to make § 5K1.1 motion because defendant went to trial although government initially offered to do so and where defendant's cooperation led to arrest of co-defendant).  Again, Ms. Mora asks this Court to consider both the extent and the timeliness of her  assistance to the government in determining a "reasonable" sentence.

**History and Characteristics of Defendant:**

**1. Lourdes Mora's Personal and Family History:** Lourdes Mora is a 59 year old native of Havana, Cuba who became a naturalized U.S. citizen in the 1970s.  She is the daughter of Dr. Rene and Carmen Mora, and the sister of Dr. Rene Mora of Boston, Massachusetts.  She has never been married and has no children.  She has never before been arrested, let alone incarcerated.

Ms. Mora's father was a medical doctor, a circulatory specialist, and her mother was his secretary in Havana.  Because he was a physician, the family lived better than most Cubans. However, by 1967, when the Cuban government had enough of her father refusing to join the Communist party, he was sent to a concentration camp.  Ms. Mora was only 11 years old at the time,

but while her father was away, she  began to express anti-government views, which caused her problems both at school and in her neighborhood.  Fortunately, the Cuban government released her father in 1969 and the family of four left Cuba for South Florida on one of the "Freedom Flights."

Once in Miami, the family found an apartment near SW 37th Avenue and 26th Street.  Ms. Mora enrolled at Shenandoah Junior High School, where she learned English.  Her father studied and passed the medical boards, completed an internship, and began again to practice medicine at 1330 Coral Way.  He battled Leukemia for the last 20 years of his life and he kept that office until 2004.  Ms. Mora helped her mother care for him until he died in 2006.

Ms. Mora was raised in Southwest Miami and had an excellent childhood.  She excelled in school, she was a member of honor societies, she earned many awards, and she had many friends. She completed high school in 1974, attended Miami Dade College for a year and, between 1975 and 1980, she completed both undergraduate and graduate degrees at F.I.U.  During those years, her parents bought the home she and her mother continue to reside.

At about age 26, Ms. Mora was diagnosed with bipolar disorder.  At the time, she was hospitalized at Charter Hospital for about a month and stabilized with several medications.  Ms. Mora remembers at the time she "lost her sense of reality."   At about the same time, she was diagnosed with diabetes Type II.  In later years, she was diagnosed with osteoarthritis and thyroid cancer. However, Ms. Mora was  gainfully employed from the time she completed college until June 2011, when agents closed down the three mental health centers which are the subject of the instant offense. For the past four years, Ms. Mora has been supported by her mother.  Although she has not applied for disability benefits, clearly, her present health does not allow her to work.

**2.  Lourdes Mora is a  59  Year Old Woman  with Very Serious Health Problems:**  Ms.

Mora  believes this Court may consider that  at the  age of 59, and already facing many serious health problems, she presents a much lower risk of recidivism than most offenders.[2]  Effective November 1, 2011, § 5H1.1 was amended  to state that age "may be relevant" as to whether a downward departure should be granted.   Under the *advisory* guidelines, age is not "ordinarily" relevant under § 5H1.1, but maybe  in unusual cases or in combination with other § 3553 factors.  In *United States v. Gray*, 453 F. 3d 1323 (11th Cir.  2006), the low end of the guidelines was 151 months for this child pornography case and the district court's sentence of 72 months was reasonable because the  defendant was 64 years old with medical problems.  See also *United States v. Hildebrand*, 152 F. 3d 756 (8th Cir.  1998), in which a departure from 51 to 63 months to probation and six months home detention was affirmed because defendant was 70 years old with medical problems, and *United States v. Carter*, 538 F. 3d 784 (7th Cir.  2008), in which the guideline range was 87 to 108 months and the court affirmed a 24 month sentence, in part, because the defendant was 61 years old and age is relevant to risk of recidivism and "the likelihood of recidivism is a proper sentencing consideration, 18 USC § 3553(a)(2)(C).  Also, in  *United States v. Lucania,* 379 F. Supp. 2d 288, 297 (E.D. N.Y. 2005), the district judge found that "Post-*Booker* courts have noted that recidivism is markedly lower for older defendants" and in *United States v. Nellum,* 2005 WL 300073 (N.D. Ind. Feb. 3, 2005)(unpub.), the court cited lower recidivism rates for older defendants and granted a downward departure.  In this case, Ms. Mora   asks  this be considered as a sentencing factor under 18 USC § 3553 in fashioning a *reasonable and not greater than necessary* sentence.

---

[2] Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12, 28 (2004)  www.ussc.gov/punlicat/Recidivism_General.pdf. ("Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21 to 9.5% over 50.)

The "Silver Tsunami" And Sentencing - Age and Health as Mitigating Factors, by Evan A. Jenness and published in the September/October 2013 Champion, discusses the issue of elderly and infirmed inmates.  What is  "old" when it comes to sentencing a defendant to prison is not the equivalent of "old" in the outside world.  The medium age of a  federal defendant at sentencing is 34.[3]  The National Institute of Corrections defines prisoners 50 and older as "elderly" and "aging",[4] and 15 states specifically define an "older" inmate as 50 or older.[5]  Only 10.8 % of all federal defendants are over 50.[6]

Ms. Mora is now 59  years old and a survivor of thyroid cancer.  She was diagnosed with diabetes Type II and bipolar disorder at age 26 and she has remained on a variety of prescribed medications. She was diagnosed with osteoarthritis three or four years ago and both her knees severely limit her mobility, despite a variety of medications.  She has also been diagnosed with psoriasis.

A  list of Ms. Mora's  treating physicians, as of October 2015, include:

Dr.  Diane R. Kreiger......endocrinology

Dr.  Azarel  Avinader.....rheumatology

Dr.  Jorge  Londono.....psychiatry

Dr. Julio Pita, Jr., Baptist Health, radiology

Dr. Jose Hernandez-Gala.....internal medicine

---

[3] Sourcebook, Table 6

[4] Dr. Joann B. Morton, An Administrative Review of the Older Inmate, USDOJ, National Institute of Corrections, 4 (1992)

[5] Old Behind Bars, at 17

[6] Sourcebook, Table 6

A list of current prescribed medications Ms. Mora is now taking include the following:

Metformin  for diabetes

Ibuprofin, Colchine and Tramadol for arthritic pain

Lithium, Welbutron,  Alprazolam and Saphris for bipolar disorder

Letters from Ms. Mora's  treating physicians have been provided both this Court and the probation office.  Among them:

Dr. Diane R. Krieger's report, dated January 9, 2015, confirms the following:

This is a 58 year old female here for follow up of thyroid cancer.  She first became aware of the problem in 2010.  She was treated with hyperthyroidism and thyroid cancer. Patient on VitD3 4000u daily. The details of thyroid cancer are: she was 55 years old at the time of diagnosis, She had a near total surgery....

Dr. Krieger's report also confirms a history of diabetes Type II, arthritis, Grave's hyperthyroidism and  Grave's eye disease.

Dr. Julio Pita, Jr., Baptist Health South Florida, Radiology Department, confirms the following in an October 31, 2013 report:

The patient underwent her original surgery in November of 2010 with a removal of a 1 cm papillary carcinoma of the thyroid with invasion of the capsule.  Subsequent to that she received 100 mci of radioactive iodine.

Dr. Azarel Abinader's letter, dated September 25, 2015, confirms Ms. Mora has been under his care for pseudo gout and advanced osteoarthritis of the knees.

> I have known her as a patient since January 2015 and as the daughter
> of my colleague and professional neighbor, Dr. Rene M. Mora, from
> 1999 to 2006, who practiced vascular surgery as a neighbor tenant in
> the professional building where I practice rheumatology since 1999.

From psychiatrist Dr. Jorge Londono, dated September 24, 2015.  He has known Ms. Mora for at least six years. Dr. Londono  states that "mainly because of her mental illness," Lourdes "was not prepared to see how she was being involved with criminals who manipulated her and took advantage of her innocence."  His letter also contains the following:

> Lourdes is a very honest, hard working woman that overcame a
> serious mental illness to remain independent and productive in society.
>  Her illness caused some social isolation and this definitely made her
> very naive and easy prey for unscrupulous people.

Pursuant to the most recent amendment (739) to § 5H1.4, a defendant's  physical condition, individually or in combination with other offender characteristics, such as age and the length of any expected sentence, may be considered as sentencing factors in fashioning a  *reasonable but not greater than necessary sentence.*

In an August 21, 2006 memorandum to all district court judges, the Administrative Office of the U.S. Courts indicated that the Bureau of Prisons will consider the presentence investigation report, the statement of reasons and judicial placement recommendations in assigning a CARE level to an inmate.  There are four levels in the BOP CARE level system, which classifies inmates according to their healthcare needs. At 59  years of age and Ms. Mora's current physical and mental

health problems,  we believe she is already precluded from Level 1.  Level 2 is reserved for inmates who are stable out-patients, who can handle their own daily living activities, and their need for acute medical services is less than three months in duration, occur no more than every two years, and can be resolved without hospitalization.  Level 3 is reserved for inmates who are fragile out-patients and Level 4 is for inmates with acute medical conditions.  At Ms. Mora's  current age and health, any incarceration sentence imposed will, most likely,   result in her  designation to the  highest  CARE levels.  Her  advancing age and extraordinary  health conditions will certainly tax the resources and finances of the Bureau of Prisons,  place an  added risk to the inmate, and  exacerbate present conditions. Certainly, the medical evidence in this case is that every day Ms. Mora  is incarcerated will be far more challenging to her and the BOP  compared to the  vast majority of the inmate population.  Even when the sentencing guidelines were mandatory, downward departures under § 5H1.4 were permissible. Again, Ms. Mora  asks that her age and health be considered as sentencing factors under 18 USC § 3553 in fashioning a  *reasonable and not greater than necessary sentence*.

**3. Ms. Mora's  Extraordinary Family Ties and Responsibilities:** Ms. Mora has lived with her mother her entire life.  Carmen Mora is now 83 years old.  She has severe arthritis and high  blood pressure, she  takes a variety of medication, and she is dependent on her daughter's daily assistance.  Ms. Mora's expected incarceration will result in her mother's placement in an assisted living facility, since the cold weather of Boston would prevent her moving in with her son and his wife.

The following was written by internist, Dr. Jose P. Hernandez-Gala, dated January 20, 2015.

The above patient, Ms. Carmen Mora, of 80 years of age, has been under my care for many years due to the following medical conditions:

1.  Arterial Hypertension

2. Chronic Tension State

3. Osteoarthritis and Osteoporosis with Gait Dysfunction

4. Chronic Positional Dizziness

Ms. Carmen Mora is considered a high-risk patient for fractures because of her age and medical condition. Ms. Mora requires close supervision from another person and assistance in her daily living.

Effective October 27, 2003, the Sentencing Commission amended § 5H1.6 to limit the availability of departures for family ties and responsibilities. A new application note, § 5H1.6, comment. (n.1(A)(i)-(iii), instructs the court to consider the seriousness of the offense, the defendant's involvement in that offense, and the members of the defendant's family. Further, comment. (n.1(B)(i)-(iv) requires the court to consider if "the defendant's service of a sentence within the guideline range will cause a substantial loss of essential care-taking or essential financial support to his family," that "the loss of care-taking or financial support exceeds the harm ordinarily incident to incarceration for a similarly situated defendant," that "the loss of care-taking or financial support is one in which no effective remedial or ameliorative programs reasonably are available," and that "the departure will effectively address the loss of care-taking or financial support." Ms. Mora asks this Court to consider her family ties and responsibilities toward her mother in fashioning a reasonable and not greater than necessary sentence in her case.

**Conclusion:** Lourdes Mora is well aware that in fashioning a "reasonable" but not greater than necessary sentence in his case, this Court must consider the nature and circumstances of the offense, 18 USC § 3553(a)(1). With that said, Ms. Mora cooperated with Government agents immediately following the execution of search warrants and the closure of the mental health facilities in June 2011.

13

Notwithstanding that Ms. Mora was being aggressively treated for cancer and continued to be receiving a variety of medications for bipolar disorder during the midst of the instant offense, she has always accepted responsibility for her involvement in this offense, she has done all she could to assist the Government, and she remains profoundly remorseful.

Subsequent to *Booker,* this Court must also consider the history and characteristics of the defendant, 18 USC § 3553(a)(1). Ms. Mora is a 59 year old first-time offender who has lived with her mother her entire life. She has never been on her own. She has battled both diabetes Type II and bipolar disorder since she was 26, she is a cancer survivor, and she now has arthritis so severe even with a variety of medications, she cannot get around. As a result of her guilty plea in this case, Ms. Mora has lost the professional license she worked so hard to earn, and her career. She will also remain a convicted felon for the remainder of her life. With that said, she asks this Court to consider a sentence which will not separate her from her family any longer than is necessary. This Court will never see Ms. Mora again.

Lourdes Mora and Counsel thank this Court for considering our Response to the PSR and Request for an Alternative Sentence. Counsel will have further remarks at the time of sentencing.

Respectfully Submitted,

By: /S/ Louis V. Martinez_____
**Louis V. Martinez**
Law Offices of Louis V. Martinez P.A.
Florida Bar Number 528862
2333 Brickell Ave Suite A-1
Miami, Florida 33129
Tel: (305) 764-3834 /
Fax: (305) 764-3814

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record.

/S/ Louis V. Martinez_____
**Louis V. Martinez**